(110 App. Div. 231.)

PEOPLE v. FLETCHER.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

LARCENY—INSTRUMENT EVIDENCING CREATION OF A DEMAND.

A contractor for removing snow for such purpose employed teams, paying the persons doing the work 33 cents a load, the manner in which they were to receive their pay being that, when a team was loaded, the driver was given a ticket, called a "load ticket," bearing only the words, " one load of snow, deliver this ticket to the foreman at designated dumping place"; and on the delivery of a load of snow at the dumping place, accompanied with one of such tickets, the driver was given in exchange a ticket called a pay ticket. on presentation of which the contractor paid 33 cents. *Held*, that the load tickets were "evidence of  *  *  *  the creating  *  *  *  of a demand, right or obligation," which Pen. Code. §§ 536, 545, declare to be the subject of larceny, and to be deemed of the value of the amount of money which in any contingency might be collected thereby.

[Ed. Note.—For cases in point. see vol. 32, Cent. Dig. Larceny, § 13.]

Appeal from Court of General Sessions, New York County.

Frank G. Fletcher was convicted of receiving stolen goods, and appeals. Affirmed.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Terence J. McManus, for appellant.

Henry G. Gray, for respondent.

INGRAHAM, J. The second count of the indictment upon which the defendant was convicted alleged that on the 27th day of January, 1905, one William Bradley was engaged in removing snow from the public streets of the city of New York, and for such purpose employed a large number of carts and wagons, paying to the persons employed in removing the snow the sum of 33 cents for each single wagon load, and for the purpose of making such payments, and as evidence of the right of such person to receive such payments, the said Bradley issued and delivered to each person so receiving a single cart load of snow a certain "load ticket," so

called, the same being a written instrument bearing the name of the said Bradley, and containing these words:

Manhattan
one load of
Snow
Deliver this Ticket to the
Foreman at designated
dumping place.

"And upon the delivery of a single cart load of snow, accompanied with one of the said tickets, to the representative of the said William Bradley at the place designated as aforesaid for dumping such snow, such representative of the said William Bradley then and there gave in exchange therefor a certain other ticket, upon presentation whereof to the said William Bradley he would and did then and there pay to the holder thereof the sum of 33 cents in money." The indictment further alleges that on the 27th day of January there was stolen from said Bradley 500 of these tickets, and that the defendant, knowing the said tickets to have been stolen, did receive and have the same.

A clerk in the employ of Bradley testified that he had a contract with the city to remove the snow from the streets; that a ticket man accompanied each loading gang of laborers, and when a cart load of snow was loaded on a cart the dockman would give to the driver of the truck one, two, or three tickets, according to the capacity of the truck and the size of the load; that, when a truck was thus loaded, the driver received this ticket or tickets, went to the dump designated for that particular gang, and dumped his load of snow, and in return for the tickets that he had received when the snow was loaded he received from the dockman the number of pay tickets that he was entitled to; that on the 27th day of January there was a ticketman in the employ of Bradley by the name of Bendt; that the witness on the 27th day of January, 1905, delivered to Bendt about 6 o'clock in the evening 2,000 load tickets, divided into pads of 500 tickets each. Two of the pads were then produced, and the witness testified that they were two of the pads delivered by the witness to Bendt, and that about 9 o'clock on the same evening Bendt returned very drunk, and upon an examination of his tickets it was found that nine pads of tickets of 100 each were missing. The witness then testified that each of these tickets represented 33 cents. Bendt testified that he was in the employ of Bradley as a ticketman; that he received these tickets from the former witness in Bradley's office on Friday, January 22, 1905, and that he carried them in a canvas bag furnished to him by Bradley; that after he received the tickets he went to a saloon and had a drink, and after that, as he left the saloon on the southwest corner of Twenty-Fourth street and Third avenue, some one struck him in the back of the neck and took the tickets out of the bag. The two pads of tickets produced and introduced in evidence the witness identified as the tickets that were in his bag and which were stolen from him.

Another witness was called and testified that he was one of the dock foremen employed by Bradley on the dock between Eighteenth and Nineteenth streets at the East river; that his duty was to receive

the load tickets and give out pay tickets in exchange for them, and superintend the dumping; that the pads of tickets that were in evidence were load tickets; that about half-past 6 or 20 minutes before 7 o'clock on the evening of January 27, 1905, the defendant, in policeman's uniform, came to the witness, accompanied by a young man about 24 years of age, dressed in dark clothes; that the witness and the two men talked together for about 10 minutes, when the man with the defendant said that he had about 500 tickets altogether and wanted to dispose of them; that the defendant had in his possession two of the pads and the other man had three; that he offered to sell them to the witness for $50; that the defendant said the man had not gotten the tickets right. The witness said he could get the $50 and made an appointment with the defendant's companion to meet him Saturday afternoon at the same place, when the defendant said that he had to be back on reserve at the station house. The defendant then spoke about repeating the appointment for the following day, and that he would be there also. Both the defendant and the man with him made an appointment to meet the witness on the following day. After the defendant showed the witness these two pads of tickets he put them back in his coat. The next time the witness saw the defendant was in the station house on the evening that he was arrested. The witness further testified that these load tickets had a value of 33 cents each, and that he was not allowed to issue a pay ticket to anybody who did not present a load ticket.

Another witness was called who kept a cigar store in Hudson street. He testified that on Saturday, January 28, 1905, the defendant came to his store, and after staying there a short time laid these two packages of tickets down, and said he would call for them on the following day, and that the next day the captain of the precinct came and obtained the tickets, and the two packages of tickets introduced in evidence were those that the witness received from the defendant and delivered to the police captain. An employé of the district attorney's office testified that he had an interview with the defendant at the station house; that defendant said that on Friday evening (January 27th) he was in a saloon at Eighteenth street and Third avenue, and that a man known to him as Pending came in the saloon and said that he had robbed a man of some snow tickets; that Pending gave defendant two packages of these tickets; that with these tickets in his possession he had heard Pending offer to sell them to Bradley's employé for $50.

The only point insisted on by the defendant is that these tickets were of no value, and were not the subject of larceny. I think it clear that the person stealing them from Bendt was guilty of larceny under section 528 of the Penal Code. Section 536 provides:

"All the provisions of this chapter apply to cases where the property taken is an instrument for the payment of money, an evidence of debt."

And section 545 provides:

"If the thing stolen consists of a written instrument, being an evidence of debt, other than a public or corporate certificate; script. bond, or security having a market value, or being the transfer of or evidence of title to any property, or of the creating, releasing, or discharging of any demand, right,

or obligation, the amount of money due thereupon or secured to be paid thereby and remaining unsatisfied, or which, in any contingency, might be collected thereupon or thereby * * * is deemed the value of the thing stolen."

Section 550 provides:

"A person who buys or receives any stolen property, or any property which has been wrongfully appropriated in such a manner as to constitute larceny according to this chapter, knowing the same to have been stolen or so dealt with, or who corruptly, for any money, property, reward or promise or agreement for the same, conceals, withholds or aids in concealing or withholding any property, knowing the same to have been stolen or appropriated wrongfully in such a manner as to constitute larceny under the provisions of this chapter * * * is guilty of criminally receiving such property."

The evidence is quite clear that these tickets were stolen, and that the defendant received them knowing them to have been stolen, and took part in a negotiation for selling the tickets to Bradley's employé. With such knowledge, he concealed them on his person, instead of delivering them to Bradley's employé, and subsequently took them to this cigar store, and left them there, where they were found by the police captain. It is true that these tickets did not upon their face provide for the payment of money, but they were tickets which, when delivered with a load of snow at the dock, entitled the person delivering them to receive from Bradley the sum of 33 cents for each ticket. They were this "evidence of * * * the creating * * * of a demand, right or obligation." No one engaged in removing snow could secure from Bradley the money to be paid for carting the snow from the street to the dump except upon presentation of such a ticket. The obligation of Bradley to pay consisted of proof that the man claiming the pay had removed the load of snow from the street to the dock from which it was dumped. These tickets were a necessary part of the creation of an obligation of Bradley to pay 33 cents for each ticket. Under section 545 of the Penal Code it was not necessary that the tickets should upon their face bear an obligation to pay money, but, where they were written instruments which was evidence of the creating of a demand, right, or obligation, they were a subject of larceny; and in determining the grade of the offense the amount of money which in any contingency might be collected thereupon or thereby was deemed to be the value of the thing stolen. Each of these tickets, therefore, was under this provision to be deemed of the value of 33 cents, and undoubtedly the person that stole them was guilty of grand larceny under section 528 of the Penal Code. That being so, the defendant was guilty of receiving the stolen property. None of the cases cited by the defendant have any application.

It follows that the evidence satisfactorily shows that these instruments were within section 545 of the Penal Code; that the defendant was clearly guilty of receiving them, knowing them to have been stolen; and that the judgment was right, and is affirmed. All concur.